## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **THE AKRON BAIL FUND,** | |
| Plaintiff, | |
| v. | Civil Action No.: |
| **THE CITY OF AKRON,** | Judge: |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

In this civil rights action, Plaintiff, a nonprofit organization whose members are peaceful demonstrators and whose mission is to support them, asks the Court to prohibit the City of Akron from further violating the constitutional rights of it and its members and constituents through the use of unnecessary police violence and other speech-chilling measures. Plaintiff alleges as follows.

## INTRODUCTION

1. This case is about the City of Akron's ongoing policy, practice, and custom of suppressing free speech and expression, including by using unnecessary police violence, against peaceful demonstrators who are speaking out against the shooting of Jayland Walker.

2. This past Monday, April 17, 2023, an Ohio grand jury failed to indict Akron police officers who were involved in the police shooting death of Jayland Walker. Peaceful demonstrations arose in the City as a result.

3. For the past three nights, peaceful demonstrators have gathered in Akron to march, sing, chant, and be with one another to express their dissent against the killing and to express

1

solidarity for Jayland Walker's family.

4.  The City of Akron has responded to these constitutionally protected demonstrations by enacting and continuing a policy, practice, and custom of suppressing speech. Each night the City escalated in its unlawful response to peaceful demonstrations.

5.  By now the City has, among other things:

- Closed its government buildings to the public, barricaded sidewalks, shut down streets, barred entrance to the parking lot of the Summit County Jail, and otherwise physically limited the public fora in which peaceful protestors can gather;

- Deployed police forces to make unlawful pretextual stops, searches, detentions, and arrests of peaceful protestors, then held them unlawfully to inhibit their right to go back out and speak; and

- Authorized police to use unnecessary force including smoke bombs and tear gas against peaceful protestors including children.

6.  Plaintiff, its members, and the people it supports, have been prohibited from speaking out and have been subject to arrest, citation, teargas, and other violence and censorship by the City. Plaintiff faces ongoing harm to its mission and its members and those it serves.

7.  Plaintiff files this lawsuit and attaches a Motion for a Temporary Restraining Order asking the Court to enjoin the City from continuing to trample the constitutional rights of Plaintiff, its members and volunteers, those it serves, and others in the City of Akron.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter pursuant to Article III of the Constitution of the United States and 28 U.S.C. §§ 1331 and 1343(3) and (4).  The relief sought is authorized by the Constitution of the United States, 42 U.S.C. § 1983 and other law.

9. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).  The actions giving rise to this suit are taking place in this judicial district.  Defendant City of Akron is located in this judicial district.

**PARTIES**

**Plaintiff**

10. **The Akron Bail Fund** is a nonprofit organization comprised of members who engage in peaceful protests, support others who do so, post bond for individuals who are arrested in connection with such protests, and otherwise help protect and support demonstrators. The Akron Bail Fund has an organizational mission that is in part devoted to furthering the right of the people to dissent against the government, particularly to express dissent against police violence and police misconduct. The Akron Bail Fund, its mission, and its individual members and the people it serves have been and continue to be harmed by the ongoing suppression of protestor speech and violence against protestors by the City of Akron.

**Defendant**

11. **Defendant City of Akron** (the "City") is a municipal corporation located in Summit County, Ohio. Its unconstitutional policies, practices, customs, and actions and those of its agents are subjecting Plaintiff to irreparable ongoing harm.

3

## **FACTS**

12. The peaceful demonstrations at issue in this case arise out of the Akron police killing of Jayland Walker in June of 2022 and the non-indictment of the officers who killed him in April of 2023.

13. The unconstitutional policies, practices, customs, and actions at issue began in at least July of 2022, have continued, and persist through the April 20, 2023 writing of this Complaint.

14. After Akron police killed Jayland Walker, peaceful protesters gathered to express their dissent during Independence Day weekend of 2022.

15. Beginning on the Fourth of July and in the days that followed, Mayor Horrigan implemented an unconstitutional curfew order quashing protest speech; Akron police indiscriminately assaulted and teargassed protestors; and City officials arrested, charged, and initiated prosecution against protesters *en masse* in retaliation for their protected speech and expressive conduct.

16. Criminal prosecutions against peaceful protestors, almost all of which have been dismissed or resulted in acquittals so far, are still ongoing.

17. In furtherance of the unconstitutional conduct it began in July of 2022, in April of 2023 the City of Akron prepared for additional anticipated protests when a grand jury was expected not to indict any of the police who were involved in Jayland Walker's killing.

18. In anticipation of peaceful protests in April, the City began to shut down its public spaces and prepare to quell speech with the shuttering of its courthouse to the public on April 10.

19. On April 14, peaceful demonstrators first gathered in anticipation of the grand jury decision. Despite there being no violence or escalation from demonstrators, immediately after the gathering voluntarily dispersed, on information and belief police made multiple pretextual

stops and at least one unlawful arrest of protestors on the basis of their speech.

20.     By the morning of April 17, although no further peaceful protests had yet occurred, the City continued to take steps to quell speech and limit public fora: the City shut the rest of its municipal buildings to the public, barricaded its public streets and sidewalks to obstruct and confine anticipated demonstrations; and deployed police armed with tear gas, pepper spray, smoke bombs, and other military-style less lethal weapons to patrol the community.

21.     As a result of the City's preemptive actions, on information and belief, some would-be protestors who the Akron Bail Fund seeks to help and protect were chilled and did not come out to demonstrate.

22.     As a result of the City's preemptive actions, some public fora, like sidewalks, were unavailable to demonstrators, narrowing the scope of where they could gather and express their message.

23.     On Monday, April 17, 2023, the State announced that a grand jury failed to indict any of the police officers who killed Jayland Walker for any crime.

24.     Peaceful demonstrations occurred that afternoon, including a gathering and caravan near Jayland Walker's memorial site, and gatherings on sidewalks and streets in other parts of the City.

25.     On information and belief, Akron police had preemptively blocked off multiple streets and sidewalks to inhibit demonstrations.

26.     That day, peaceful demonstrators led a rally and march downtown in Highland Square and other nearby places in the City. About 80 people gathered during the spring afternoon, with community members eating picnics and protestors marching.

27.     The marches largely concluded while it was still daylight, and no violence, unrest, or even

property damage had occurred as a result of protestor conduct.

28. Predictably, and in the City's course of continuing unlawful conduct and its policy and plan, police responded unconstitutionally to these peaceful protests.

29. Police lined Market Street and other streets surrounding the demonstrations. As protestors left to go home, police began to make pretextual stops of protestors without reasonable suspicion that they were committing any crime.

30. Police stopped cars, ordered people out of them, handcuffed people and searched the contents of their cars, all without reasonable suspicion or probable cause. On information and belief, temporary detention and handcuffing included children.

31. For example, one such stop was made of a car on the purported basis that it was outside of the marked lanes while exiting slowly off of a parked-up road.

32. Based upon these retaliatory and pretextual stops, police made at least 6 arrests which on information and belief were without probable cause. Several of the arrests were made for minor misdemeanors which are not arrestable offenses.

33. Affidavits in support of the complaints against arrestees reveal that arrests were impermissibly based upon free speech. For instance, one such complaint accuses a protestor of "yell[ing] obscenities," an activity squarely within the First Amendment's protection.

34. Police took arrestees into custody, booked them at the Summit County Jail, then transferred them to the Stark County Jail where some were forced to spend the night before their release.

35. On information and belief, detainee transport to Stark County and the length of time detainees were held was at the City's direction and was for the purpose of deterring further protest and keeping arrestees from continuing to associate with other protestors. There was sufficient room to house detainees at the Summit County Jail, closer to the protests and most

6

protestors' homes and families. But when Plaintiff's volunteers arrived at the Summit County Jail to attempt to retrieve releasees and give them rides, Summit County officials turned them away from even entering the parking lot. These people had to drive to Stark to retrieve their fellow peaceful protestors.

36. The following day, on April 18, 2023, peaceful protestors again took to the Akron streets to express solidarity with the Walker family and to express dissent against police violence, among other protected messages.

37. On information and belief, fewer people came out to express their message because they were chilled by the prior day's suppression of speech (and some were still unlawfully detained).

38. On information and belief, Akron police, in furtherance of the City's policy and practice of suppressing speech, made additional unlawful pretextual stops and detentions of persons who were protesting, on the basis of their protected expression. On information and belief Akron police cited protestors and towed their cars as punishment for their participation in these protests.

39. On April 19, 2023, peaceful protesters gathered again, although again, on information and belief, in fewer numbers.

40. On information and belief, the City's unconstitutional response to demonstrations the previous day had chilled individuals from coming back out to exercise their rights.

41. That afternoon, protestors gathered in Hawkins Plaza and along Copley Road, again singing and chanting in peaceful dissent.

42. Again, police came authorized by the City's plan and continuing course of conduct to continue to quell protest speech. This time, however, police misconduct escalated.

43. After the march began, lines of uniformed officers descended upon peaceful demonstrators,

7

propounding unlawful orders for the protestors to cease First Amendment protected speech. Before protestors had any opportunity to even attempt to comply with these unlawful orders, and while others attempted to flee, police arbitrarily and wantonly released smoke bombs, pepper spray, and tear gas onto the demonstrators.

44. Again, no violence, unrest, or even property damage had occurred as a result of protestor conduct prior to police uses of force.

45. Peaceful protestors, injured and at risk of further harm, attempted to leave.

46. Charging into the chaos they had initiated, police made another at least 6 arrests based upon similarly dubious charges as they had previously.

47. City officials again booked arrestees and transported detainees to the Stark County Jail where, at the time this Complaint is being written, some are still detained.

48. On information and belief, the City of Akron has cancelled the arraignments it typically holds every Saturday. As a result, any additional protesters who are arrested beginning tonight will not be able to be arraigned within 48 hours of their arrest.

49. On information and belief, the cancellation of Saturday arraignments and the prolonged detention of peaceful protestors is another mechanism that the City is using to suppress protected speech and keep demonstrators out of public fora.

50. Members, volunteers, and organizers with Plaintiff the Akron Bail Fund, as well as the people Plaintiff exists to support, were present at and experienced the harm described in each of the foregoing allegations.

51. At the time of writing this Complaint, on April 20, 2023, peaceful demonstrators including people affiliated with Plaintiff are gathering in Akron for a family-friendly event to rest and restore one another and pay tribute to Jayland Walker's memory.

52.  Plaintiff and others plan to gather outdoors, barbeque, play music, associate together, and share their common messages: police brutality is wrong, Jayland Walker should still be alive, and the community stands together to effect change and to heal.

53.  Plaintiff, its members, volunteers, and the people it serves also wish to come out to demonstrate again in the coming days.

54.  Based upon the continuing course of conduct by Akron since last July and Akron's escalating suppression of protestor speech over the last few days, Plaintiff, its members and volunteers and the people they serve are in fear for their safety from police use of force and Plaintiffs are worried that their message will not be heard.

55.  On information and belief, some people who were previously planning to attend the April 20 gathering and subsequent demonstrations will now not attend, because their freedom of speech and expression has been chilled by Akron's misconduct.

56.  If fewer people attend tonight's gatherings and gatherings and demonstrations planned in the coming days, the mission of the Akron Bail Fund, its message, and the message of the people it serves will continue to be reduced in its power and reach.

57.  The suppression of speech via unlawful use of force, threats and intimidation, blocking off public fora, and unlawful stops, detentions, and arrests, as well as other speech suppression mechanisms, is part of a formal policy, practice, and custom of the City of Akron. The City has engaged in similar practices against protesters with this same specific message beginning in July of 2022 and continuing through the present day. City officials have explicitly and under oath represented that these actions by the Akron police are part of the City's official approach to handling these demonstrations.

58. Plaintiff files suit now to stop the ongoing suppression of the exercise of its constitutional rights, the constitutional rights of its members, and those of the people it serves.

## CAUSES OF ACTION

### COUNT ONE
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983
### Violations of First Amendment and Ohio Constitution

59. The foregoing allegations are incorporated as if re-alleged herein.

60. Peaceful speech and assembly are fundamental constitutional activities protected by the First Amendment to the United States Constitution.

61. Defendant's policies, practices, customs, and actions severely and unduly limit First Amendment expression and infringe upon the rights of Plaintiffs and the public at large to speak and assemble peacefully and to associate with one another.

62. Defendant's policies, practices, customs, and actions would chill a person of ordinary firmness from engaging in the constitutionally protected activities of peaceful speech, assembly, and association.

63. Indeed, Defendant's policies, practices, customs, and actions have had the purpose and effect of suppressing constitutionally-protected demonstrations.

64. Upon information and belief, the at-issue policies, practices, customs, and actions of Defendant are motivated by the viewpoint of Plaintiff and other demonstrators.

65. The at-issue policies, practices, customs, and actions are not reasonable regulations on the time, place, or manner of Plaintiff's or others protected activity within the meaning of the First Amendment.

66. Defendant's unconstitutional policies, practices, customs, and actions have caused and will continue to cause irreparable harm to the rights of Plaintiff and of the community at large,

to engage in the constitutionally protected activities of peaceful speech and assembly.

67. As a direct result of Defendant's unconstitutional policies, practices, and actions and the constitutional violations committed by Defendants, Plaintiff is entitled to relief under the federal and state constitutions and 42 U.S.C. § 1983.

**COUNT TWO**
**Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983**
**Excessive Force in Violation of Fourth and Fourteenth**
**Amendments and Ohio Constitution**

68. The foregoing allegations are incorporated as if re-alleged herein.

69. The use of less-lethal weapons including but not limited to tear gas to control and suppress demonstrations in the absence of an immediate safety threat constitutes excessive force in violation of the Fourth and Fourteenth Amendments.

70. On information and belief, the at-issue use of excessive force is designed to and is having the effect of prohibiting Plaintiff and others from exercising their constitutional rights, and is viewpoint-based.

71. The City's policies, practices, customs, and actions of authorizing the police to deploy less-lethal weapons to suppress demonstrations in the absence of an immediate safety threat violates the right of Plaintiff and others to be free from excessive force.

72. Defendant's unconstitutional policies, practices, customs, and actions have caused and will continue to cause irreparable harm to the rights of Plaintiff and of the community at large.

73. As a direct result of Defendant's unconstitutional policies, practices, customs, and actions and the constitutional violations committed by Defendants, Plaintiff is entitled to relief under the federal and state constitutions and 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

Plaintiff requests that the Court enter judgment in their favor and issue the following relief:

A.  An order temporarily restraining the City and all agents and agencies or organizations under its direction or control or from which it has requested assistance with regard to the protests from further violating Plaintiffs' constitutional rights through any speech-suppression measure including the use of less-lethal weapons;

B.  An order preliminarily enjoining the City and all agents and agencies or organizations under its direction or control or from which it has requested assistance with regard to the protests from further violating Plaintiff's constitutional rights through any speech-suppression measure including the use of less-lethal weapons;

C.  An order permanently enjoining the City and all agents and agencies or organizations under its direction or control or from which it has requested assistance with regard to the protests from further violating Plaintiff's constitutional rights through any speech-suppression measure including the use of less-lethal weapons;

D.  A declaration that the City has violated Plaintiff's constitutional rights by suppressing and chilling their First Amendment freedoms and by using less lethal weapons to control and suppress peaceful demonstrations;

E.  Damages for the injuries Plaintiff has suffered to date, including but not limited to damages for organizational harm and diversion of resources, individual physical and mental pain and suffering, punitive damages, and other damages;

F.  An award of interest, costs, and reasonable attorney's fees; and

G.  All such further relief as the Court deems appropriate.

Dated Thursday, April 20, 2023.

Respectfully submitted,

/s/ Elizabeth Bonham
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square Suite 1900
Cleveland, Ohio 44113
T: (216) 241-1430
F: (216) 621-0427
elizabeth@FGGfirm.com
sarah@FGGfirm.com