# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **THE AKRON BAIL FUND,** | |
| Plaintiff, | |
| v. | Civil Action No. 5:23-cv-837 |
| **THE CITY OF AKRON,** | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR
## TEMPORARY RESTRAINING ORDER

The City of Akron has gone to galling lengths to suppress and chill peaceful political demonstrations in the wake of the police killing of Jayland Walker, and to punish people and groups who have attempted to protest despite Akron's deterrence. On Independence Day weekend in 2022, when peaceful demonstrators first took to the streets to protest Jayland Walker's killing, the City of Akron censored them by issuing an unconstitutional curfew, making illegal mass arrests, and attacking them with tear gas and other weapons. Its unfounded criminal prosecutions of protestors from that time are still ongoing. Now, beginning on April 14, 2023, in anticipation of a grand jury's non-indictment of the police involved in Jayland's shooting, the City resumed its policy of suppressing and punishing the same people protesting these events. The City shuttered its municipal buildings and blocked off sidewalks and other public fora to protestors. The City equipped itself and its police with military-style weapons including smoke bombs and tear gas. Then, when demonstrations began on April 14, and each night on which there has been a demonstration since, Akron police have enforced the City's

1

policy of speech suppression through uses of excessive force, unlawful stops, unlawful arrests, and other misconduct. Plaintiff the Akron Bail Fund files this Motion on behalf of itself, its members, and the protestors it serves and aids, asking the Court to enjoin the City from continuing to suppress speech and use unnecessary force against the protestors.

## Statement of Facts

Plaintiff incorporates the facts alleged in the Complaint as if fully rewritten herein.

## Legal Standard

This Court should grant a temporary restraining order because Plaintiff has satisfied the four required considerations: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm in the absence of relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See, e.g. Summit Cty. Democratic Ctrl. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 552 (6th Cir. 2004).

## Argument

**I. Plaintiff is likely to succeed on the merits of its First and Fourth Amendment claims because the City's speech restrictions and unlawful uses of force are patently unconstitutional.**

Courts routinely grant relief, including emergency relief, enjoining the unlawful use of force and other measures directed at quelling the protected speech of political demonstrators. The United States Supreme Court and lower courts have upheld emergency injunctions where police action chills people from exercising their First Amendment rights. *See Allee v. Medrano*, 416 U.S. 802, 810 (1974). Plaintiff is likely to succeed on the merits of this case for the same reasons as plaintiffs have repeatedly succeeded when they seek redress from the federal courts when abuses of state power threaten their constitutional right to protest.

### A. Plaintiff is likely to succeed on its First Amendment claims.

Gathering in the public streets to protest police brutality is at the core of the First Amendment's protections. Activities such as demonstrations, protest marches, and picketing are quintessentially protected activities. *E.g., Edwards v. South Carolina*, 372 U.S. 229 (1963); *Thornhill v. Alabama*, 310 U.S. 88 (1940); *NAACP W. Region v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984). Traditional public for a, streets, sidewalks, and parks, have "immemorially been held in trust for use of the public . . . for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939); *accord United States v. Grace*, 461 U.S. 171, 177 (1983); *Gaudiya Vaishnava Soc'y v. City and Cty. of S. F.*, 952 F.2d 1059, 1065 (9th Cir. 1990). Moreover, "[t]here is a strong First Amendment interest in protecting the right of citizens to gather in traditional public forum locations that are critical to the content of their message, just as there is a strong interest in protecting speakers seeking to reach a particular audience." *Galvin v. Hay,* 374 F.3d 739, 752 (9th Cir. 2004) (holding dispersal of protected First Amendment assembly unconstitutional even though it violated location restriction). Criticism of the government is no less protected when it is passionate or even inflammatory. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (Free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."). For all the same reasons, the right to peaceably assemble is likewise "among the most precious" rights protected in the Constitution. *United Mine Workers of Am., Dist. 12 v. Fl. State Bar Ass'n* (1967), 389 U.S. 217, 222.

"Consistent with the traditionally open character of public streets and sidewalks… the government's ability to restrict speech in such locations is 'very limited.'" *McCullen v. Coakley*,

134 S.Ct. 2518, 2529 (2014) (quotation omitted). Where a City attempts to limit or curtail speech, it bears the burden to prove that any burden is content-neutral, narrowly tailored to further a significant government interest, and leaves open ample alternatives to communicate with the intended audience. *Id*. at 2534. "A [regulation, policy, or other control] is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen,* 134 S.Ct at 2540; *see also Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2015) ("As the Court explained in *McCullen*, … the burden of proving narrow tailoring requires the [government] to *prove* that it actually *tried* other methods to address the problem." (emphasis in original).

Here, the City of Akron has preemptively limited the public fora available to demonstrators to make their message heard by blockading sidewalks and shuttering public spaces. Then, Akron has deployed armed police to each day's peaceful protest, at which police have escalated from making unlawful pretextual stops and arrests of demonstrators to using chemical weapons against the groups. Regardless of this police conduct, demonstrators themselves have not escalated into violence, and have not committed even property damage (let alone actual violence) prior to police uses of force. The City has no justification for its preemptive suppression of speech or its ongoing retaliation against speech. What's more, this misconduct by Akron is a continuation of the same misconduct it used to censor the same message from many of the same demonstrators when police killed Jayland Walker last year. The pattern of conduct suggests an even less defensible basis for speech suppression than overbreadth: that the City disfavors these protestors' viewpoint. In either case, as a result of the

4

City of Akron's ongoing policy, practice, custom, and conduct of suppressing speech in the ways described in the Complaint, protestor speech is being chilled and continues to be punished. Protestors seeking to continue to gather and march in Akron, to associate with one another, and to make their voices heard have either been chilled from doing so or continue to do so at risk of further censorship and violence. *See* Declarations of Akron Bail Fund members and constituents, attached as Exhibits A, B, C, and D. This wholesale suppression of protestor speech—even where demonstrations are peaceful, occur in public fora, occur in daylight hours, and have repeatedly dispersed voluntarily and peacefully—cannot survive First Amendment scrutiny.

Peaceful political protest in the public square, the purest form of expression protected by the First Amendment, must be protected, not infringed, when law enforcement interacts with peaceful demonstrators. The opposite is happening in the City of Akron at this moment. The City has gone to lengths to intimidate and chill protestors and to limit the fora available to them, and is punishing them with detention, arrest, and unlawful use of force. The nonviolent political protests decrying the killing of Jayland Walker and the non-indictment of his killers are protected by the constitution and must be allowed to proceed free of this suppression. For these reasons, Plaintiff's First Amendment claims are likely to succeed on their merits, and the Court should grant Plaintiff's Motion for a Temporary Restraining Order.

**B. Plaintiffs' Fourth Amendment claims are likely to succeed on the merits.**

The constitution also guarantees Plaintiff, its members volunteers and constituents, and all people the right to be free from excessive force. *Graham v. Connor,* 490 U.S. 386, 395 (1989). When there is no governmental interest supporting the use of force in the first instance—such as when the government uses force as an unlawful speech suppression tactic— the application of even minimal force is unreasonable. *See, e.g., Liston v. Cty. of Riverside*, 120

F.3d 965, 976 (9th Cir. 1997) (citation omitted). When police use chemical weapons or other less lethal weapons to subdue someone who is not posing any specific threat, they violate the Fourth Amendment. *See Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009); *Ciminillo v. Streicher*, 434 F.3d 461, 464-5 (6th Cir. 2006); *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994); *Atkins v. Township of Flint*, 94 F. App'x. 342, 349 (6th Cir. 2004). Therefore, federal courts have found that the indiscriminate use of pepper spray to disperse protesters can constitute excessive force where it is "unnecessary." *See, e.g., Young v. Cty. of L.A.*, 655 F.3d 1156, 1167 (9th Cir. 2011) (citation omitted).

Here, just a few days after peaceful demonstrations began and although they remained peaceful, Akron police have already begun using military-style weapons indiscriminately against demonstrators who pose no threat to the public. Demonstrators are being subjected to and threatened with the use of chemical weapons even when they are peaceful, compliant, and are committing no unlawful conduct. Even putting aside that the use of force to punish protected speech is unlawful, here there is no justification for the use of *any* force under excessive force law alone. Protestors who have faced the use of chemical weapons have been physically and psychologically injured, have been punished for exercising their First Amendment rights, and continue to fear further injury and censorship. *See* Declarations of Akron Bail Fund members and constituents, attached as Exhibits A, B, C, and D. Plaintiff asks the Court to intercede to prohibit the continuing harm from excessive force, and related suppression of speech and expression, that the further use of tear gas and other weapons will result in. For all these reasons, Plaintiff's First Amendment claims are likely to succeed on their merits, and the Court should grant Plaintiff's Motion for a Temporary Restraining Order.

## II. The other factors required for a temporary restraining order tip sharply in favor of enjoining the City.

### A. Absent a TRO Plaintiff will suffer irreparable harm.

"When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); When the government threatens First Amendment rights, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *see also Ohio State Conference of N.A.A.C.P. v. Husted,* 768 F.3d 524, 560 (6th Cir. 2014) (same). Here, Plaintiff seeks relief against the continued infringement of its and its members' and others' First and Fourth Amendment rights. Further, Plaintiff seeks relief to avoid for itself, its members, and others yet another evening of physical injury, panic, trauma, unlawful arrests and detentions, and the quenching of the protected message it wants the world to hear. Plaintiff has demonstrated it will suffer irreparable harm absent a restraining order.

### B. The public interest and a balance of equities both weigh heavily in Plaintiffs' favor.

The protection of constitutional rights is "a purpose that is always in the public interest.*"* *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 222 (6th Cir. 2016). Plaintiff seeks a restraining order not only to protect itself and its members and constituents, but to protect all persons seeking to peacefully demonstrate with a shared message in the City of Akron. Such an order would protect the constitutional rights of the entire community. Conversely, such an order cannot materially harm the City of Akron—indeed, all Plaintiff seeks is for the City to behave in a way that clearly established constitutional law already requires. The public interest and a balance of the equities therefore favor the entry of a restraining order.

**Conclusion**

Plaintiff, its members, the people it seeks to serve, and all demonstrators and would-be demonstrators in Akron are suffering irreparable harm from the ongoing suppression of their First Amendment rights and ongoing risk of police use of excessive force. A temporary restraining order stopping the City's unlawful conduct would serve the public interest and would harm no one.

Moreover, and critically, Plaintiff is likely to succeed on the merits. In cases involving constitutional rights, "the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998). For the reasons discussed above, Plaintiff is likely to succeed because the City's actions constitute unreasonable restrictions on speech, expression, and association; arbitrary and capricious restraints on plaintiffs' and others' constitutional rights; and unlawful uses of force.

Plaintiff therefore respectfully requests that this Court grant its Motion for a Temporary Restraining Order and issue the attached Proposed Order immediately. In the alternative, should the Court determine that a hearing is necessary, Plaintiff respectfully requests that oral argument be set at the earliest possible time. Counsel for Plaintiff is able to appear in person within one hour's notice to drive, or by videoconference at any time.

Dated Thursday, April 20, 2023.

Respectfully submitted,

/s/ Elizabeth Bonham
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FRIEDMAN GILBERT +
GERHARDSTEIN
50 Public Square Suite 1900
Cleveland, Ohio 44113

T: (216) 241-1430  
F: (216) 621-0427  
sarah@FGGfirm.com  
elizabeth@FGGfirm.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

|                                |                      |
|--------------------------------|----------------------|
| **AKRON BAIL FUND,**           |                      |
|     Plaintiff, |                  |
| v.                             | Civil Action No.:    |
| **City of Akron,**             |                      |
|     Defendant, |                  |

# DECLARATION OF NATALIA WYRD

1. My name is Natalia Wyrd, I am over the age of 18 and competent to make this declaration;

2. I am one of the organizers for the Akron Bail Fund.

3. The Akron Bail Fund's mission is to support the liberation of locals and protestors from the burden of the criminal legal system through direct aid efforts and police brutality victim assistance.

4. The Akron Bail Fund is an abolitionist organization that documents political arrests, posts bail for indigent people, supports them while in custody, communicates with them about their case and the court process, provides transportation to and from court, observes court proceedings, pays fines and fees associated with their legal case, and provides mutual aid assistance to cover costs and hardships as a result of their arrest and legal case.

5. The Bail Fund educates people on their rights to Freedom of Speech and Assembly and advocates for their right to do so safely from persecution or retaliation from the police and government.

6. The actions of the City of Akron and Akron Police Department have physically affected Bail Fund volunteers who have been tear-gassed and maced while at a peaceful protest in a residential neighborhood. Bail Fund volunteers and leaders have also been targeted and arrested for their involvement in organizing work related to the Bail Fund and the Justice for Jayland Walker movement, including one Bail Fund organizer who is currently in custody.

7. Furthermore, the arrests of nonviolent protesters, discriminatory citations, vehicle impoundments, transferring of inmates to other county jails without notice, failure to give people an arraignment within 24 hours, incorrect information given to family members and organizers who requested to know the location of arrestees, and the blocking of access to the Summit County Jail has hindered our ability to carry out our mission.

8. On Wednesday night, April 19th, over 100 protesters gathered on Copley Road to speak out against the brutal murder of Jayland Walker, the injustice of the State of Ohio which presided over a grand jury that declined to charge Jayland's 8 killers, and a corrupt city government that has thus far declined to name and fire these 8 officers.

9. Reporters, protesters, and neighbors alike all witnessed a protest that was peaceful and nonviolent. However, Akron Police, accompanied by SWAT forces, moved in around 8:00 pm and deployed pepper spray into protestors' and journalists' faces and against the backs of people walking away, then let off multiple canisters of tear gas in an area with young children present. An official order to disperse was not given by the city until 8:30 pm. After this incident, Akron police and SWAT followed a peaceful caravan and arrested at least 9 protesters around the city, detaining several more and towing their vehicles, leaving protesters stranded.

10. Wednesday night's violence comes after several consecutive nights of arrests, discriminatory citations, and violent traffic stops of minors, protesters and Bail Fund organizers exercising their right to protest and attempting to return home after demonstrations. During a pretextual traffic stop of a protester vehicle after a demonstration on Friday, April 14th, four teenagers were pulled from their car, slammed against the car's doors, handcuffed, and put in the back of police cruisers. A 15 year old girl was let out of her handcuffs only to be shoved across the sidewalk multiple times by a male officer. Only the driver of the vehicle was issued a citation, but another passenger, his 17 year old brother, was taken in a cruiser without notice to his family or legal guardian to the Summit County Juvenile Detention Center. After being issued threats by officers there, he was found by his legal guardian and released without citation.

11. Deploying chemical weapons of war on and ordering the dispersal of peaceful protesters and journalists is violence and escalation on the part of the Akron police and the city administration.

12. This escalation must be immediately halted for the Bail Fund to continue our work of supporting defendants, paying bail, and advocating for abolition, community safety, and freedom of speech and assembly. Akron's residents must also be safe to assemble without fear or threat of arrest, deployment of chemical weapons, intimidation, or physical violence.

I declare the foregoing under penalty of perjury.

SIGNATURE

Natalia Wyrd

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

|                                    |                         |
|------------------------------------|-------------------------|
| **AKRON BAIL FUND,**               |                         |
|     Plaintiff, |                         |
| v.                                 | Civil Action No.:       |
| **City of Akron,**                 |                         |
|     Defendant. |                         |

## DECLARATION OF TAMARA COTEAT

1. My name is Tamara Coteat, I am over the age of 18 and competent to make this declaration;
2. My involvement in the Akron Bail Fund is doing court observation, and supporting defendants through the criminal-legal process.
3. My involvement with the peaceful demonstrations in Akron has been a peaceful protestor/demonstrator at several Justice for Jayland events. On April 19, 2023 me and other protestors. met at Hawkins Plaza and marched down Copley Rd for Justice for Jayland. We were peacefully protesting, and a couple hours in I heard the sirens, turned around like "oh shit", and that's when riot police said get on the sidewalk. I was getting kids out of the way, a mom with a baby, toddler, and six year old, getting them on the sidewalk, when they threw the first can of tear gas. I dodged it, and a couple minutes later they threw another one at us, and I dodged it again. I got to a field on Copley and East, and they threw a third can in the field as I was walking to my friend's car.
4. I have been harmed by the City's use of force and speech suppression because when the tear gas hit me, my throat was burning, and I was scared because I have severe asthma, I could've died. That's when I saw the case of water. It was like a dry fire in my throat, and I hurried up and drank the water, began to cough, vomit, it was horrible. After I vomited I peed myself, as you lose all bodily function when tear-gassed. Then my eyes began to burn, my whole face was on fire. That shit aint no joke. They ask me how it felt and I say "it felt like fiery hell." Like just everything was on fire. My breathing is still affected 24 hours later.

I declare the foregoing under penalty of perjury.

SIGNATURE

Tamara Coteat

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| **AKRON BAIL FUND,** <br><br> Plaintiff, <br><br> v. <br><br> **City of Akron,** <br><br> Defendant. | Civil Action No.: |

# DECLARATION OF DANIELLE TAYLOR

1. My name is Danielle Taylor, I am over the age of 18 and competent to make this declaration;

2. I have protested alongside Akron Bail Fund and other community groups and organizers in advocating for justice.

3. My involvement with the peaceful demonstrations in Akron has been actively participating in local protests and organizing efforts to advocate for Justice for Jayland Walker. The community has been showing up and that is a beautiful thing. However, since day one, Akron Police have battled protestors, escalated violence, and targeted different individuals and groups that have been vocal.

   When we were out protesting Wednesday on Copley Road, we were peaceful. The whole community and neighborhood was out there, joining together. And then heavily armed military vehicles and police cars came in, tear gassed a nonviolent, beautiful protest. Neighbors, kids, and journalists were maced and tear-gassed.

4. I have been harmed by the City's use of force and speech suppression by having my voice silenced and having experienced the trauma of police raining hell down on my community.

   It seems like it's the city's and Akron Police's mission to paint Black and Brown people as violent in order to suppress our rights to gather and speak out. They have been bullies and abusers and it must stop.

I have seen friends, colleagues, fellow protestors arrested, beaten, and tear-gassed. Police violence makes me fear for myself, my community, and also for our ability to freely express ourselves.

I was personally tear gassed protesting at the Summit County Jail this past summer, when APD rolled in with snipers and a tank to peaceful protestors.

I declare the foregoing under penalty of perjury.


SIGNATURE

Danielle Taylor

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

**AKRON BAIL FUND,**

    Plaintiff,

v.

**City of Akron,**

    Defendant.

Civil Action No.:

# DECLARATION OF RYAN KEEN

1. My name is Ryan Keen, I am over the age of 18 and competent to make this declaration;
2. My involvement in the Akron Bail Fund is helping with jail support, court watch, and cop watch after the Bail Fund formed in the summer of 2022 after the murder of Jaylad Walker.
3. My involvement with the peaceful demonstrations in Akron has been helping do community safety work at Justice for Jayland events. Sometimes I bring my kids with me so they can be in this powerful community. I have helped give community members and protestors transportation. I work with many social justice organizations in Akron in this coalition that has come together for Jayland Walker.
4. I have been harmed by the City's use of force and speech suppression by being assaulted with pepper spray and chemical irritants at Copley Rd on April 19, 2023 at a peaceful protest. I have been traumatized by the police violence I have been the victim of and witness to. I have been stalked, harassed, and surveilled with warrants signed for my Twitter account data. I do not feel comfortable bringing my kids to protests now because APD and Summit County Sheriffs have been brutalizing and traumatizing kids over the last year since Jayland's murder. I feel like the City of Akron has shown a pattern of behavior escalating violence, surveillance, and trampling civil liberties.

I declare the foregoing under penalty of perjury.

SIGNATURE

Ryan Keen