IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE AKRON BAIL FUND | ) | Case No. 5:23-cv-00837 |
| | ) | |
| *Plaintiff* | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| -vs- | ) | **MOTION TO DISMISS** |
| | ) | |
| CITY OF AKRON | ) | |
| | ) | |
| *Defendant* | ) | |

Now comes Defendant City of Akron, by and through undersigned counsel, and hereby moves for dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). Plaintiff The Akron Bail Fund lacks standing in this matter and, therefore, the Court is without subject matter jurisdiction to consider the merits of this case. A Memorandum in Support is attached.

Respectfully submitted,

Eve V. Belfance
Director of Law

/s/ Brian D. Bremer
John Christopher Reece – No. 0042573
Deputy Director of Law
Michael J. Defibaugh – No. 0072683
Brian D. Bremer – No. 0087363
Assistant Directors of Law
161 S. High St., Suite 200
Akron, Ohio 44308
(330) 375-2030
(330) 375-2041 (fax)
jreece@akronohio.gov
mdefibaugh@akronohio.gov
bbremer@akronohio.gov
*Attorneys for Defendant*

## MEMORANDUM IN SUPPORT

### INTRODUCTION

The Akron Bail Fund filed this 42 U.S.C. § 1983 against the City of Akron action alleging claims of the First Amendment violations and excessive force in violation of the Fourth Amendment. (Complaint). The Bail Fund is seeking monetary and injunctive relief.

**I.    The Akron Bail Fund's mission is to assist arrested individuals and provide support throughout those individuals' criminal prosecutions.**

The Bail Fund alleges that it is a "nonprofit organization whose members are peaceful demonstrators and whose mission is to support them." (Complaint, at ¶ 10). However, the Bail Fund misrepresents itself and its purpose to the Court. The Akron Bail Fund is not a non-profit organization. It is not organized in any legal capacity in the State of Ohio and does not function as a representative organization. Furthermore, contrary to the stated purpose in the Complaint, the Bail Fund's actual mission, as stated on its social media pages, is to provide bail funds to individuals arrested and to otherwise support them throughout the judicial process.[1] [2] Akron Bail Fund holds itself out to be "a grassroots, abolitionist organization working to liberate all people from jail and the criminal-legal system in Akron, OH" with a goal of "[l]iberating poor people from the colonial kkkourts and criminal-legal system"[3] [4] Notably, the Bail Fund's anonymous social media pages do not discuss its members or membership in any capacity.

**II.    This case concerns protests and other events in the City of Akron.**

The Complaint focuses solely on protests and the City's preparation and response to those protests. The Bail Fund alleges that the City has responded to protests by "enacting and continuing

---

[1] Akron Bail Fund Linktree: https://linktr.ee/akronbailfund
[2] Akron Bail Fund Action Network Account:  https://actionnetwork.org/fundraising/support-the-akron-bail-fund
[3] Akron Bail Fund Action Network Profile: https://actionnetwork.org/groups/akron-bail-fund
[4] Akron Bail Fund Instagram Account: https://www.instagram.com/akron_bail_fund/

a policy, practice, and custom of suppressing speech." (Complaint, at ¶ 4). At no point in its Complaint does the Bail Fund allege how it, as an organization, has been harmed by the City's actions, or how its purpose of assisting arrestees has been frustrated by the alleged actions. Instead, the Bail Fund focuses its allegations on the actions that the City allegedly committed against individuals, such as making public fora "unavailable to demonstrators" (Complaint, at ¶ 22), making "unlawful pretextual stops and detentions of persons who were protesting" (¶ 38), and using "smoke bombs, pepper spray, and tear gas" on protesters (¶ 43).

The Bail Fund lacks standing, both in its own right and on behalf of its members, to bring this action. Accordingly, this Court does not have subject matter jurisdiction and must dismiss the Complaint.

## LAW AND ARGUMENT

### I. The issue of subject matter jurisdiction may be raised at any time.

Standing is a jurisdictional requirement and, if a plaintiff lacks standing, then the court lacks subject matter jurisdiction. *Tennessee General Assembly v. U.S. Dept. of State*, 931 F.3d 499, 507 (6th Cir. 2019). A party invoking federal jurisdiction has the burden of proving the existence of that jurisdiction. *Global Tech., Inc. v. Yubei (XinXiang) Power Steering System Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). "The objection that a federal court lacks subject-matter jurisdiction * * * may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). A motion to dismiss for lack of subject matter jurisdiction is properly brought pursuant to Fed. Civ. R. 12(h)(3). *See id.* at 508. A Rule 12(h)(3) motion is analyzed in the same manner as a motion to dismiss brought under Fed. Civ. R. 12(b)(1). *Cohan v. MGM Hospitality, Inc.*, No. 20-cv-10981, 2021 WL 4478744, *1 (E.D. Mich. Sept. 30, 2021); *see also Tubbs v. Long*, No. 3:20-cv-00477, 2022 WL 508895, *3 (M.D. Tenn. Feb. 17, 2022).

Motions to dismiss for lack of subject matter jurisdiction generally come in two varieties: a facial attack or a factual attack. *Gentek Bldg. Products v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions whether the plaintiff has properly alleged a basis for subject matter jurisdiction, thus requiring the court to take the allegations of the complaint as true for purposes of the analysis. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). However, a factual attack challenges the factual existence of subject matter jurisdiction. *Id.*

> In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside the pleadings, and has the power to weight evidence and determine the effect of that evidence on the court's authority to hear the case.

*Id.* at 759-760. The City is moving to dismiss on the basis there is no factual existence of subject matter jurisdiction in this case because the Bail Fund lacks standing and, therefore, the Court may consider evidence outside of the pleadings in ruling on the Motion.

II. **This Court lacks subject matter jurisdiction to decide this matter because the Akron Bail Fund does not have standing.**

To establish standing, a plaintiff must show an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable judicial decision. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020). An injury in fact must be concrete, particularized, actual, and imminent. *Id.* In an action for declaratory or injunctive relief, "a plaintiff 'must show actual present harm or a significant possibility of future harm.' " *Id.*, quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). Furthermore, standing must exist as to each claim brought by a plaintiff. *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016). An organization may satisfy Article III's standing requirements by "suing on its own behalf, called 'organizational standing,' or by suing on behalf

3

of its members, called 'associational' or 'representative' standing." *Children's Health Defense v. U.S. Food and Drug Administration*, No. 21-6203, 2022 WL 2704554, *2 (6th Cir. July 12, 2022).

The Bail Fund does not have standing to bring this action in its own right or on behalf of its members.

## A.  The Bail Fund does not have direct, organizational standing.

An organization asserting direct standing to sue in its own right must demonstrate an injury in fact, fairly traceable to the defendant's conduct, that is likely to be redressed by a favorable decision from the court. *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014). To establish an injury in fact, the Bail Fund must establish such a personal stake in the outcome of the controversy as to warrant its invocation of federal-court jurisdiction. *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 429 (6th Cir. 2008), quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 353 (1975). An alleged injury must be "distinct and palpable," and cannot be abstract, conjectural, or hypothetical. *Id.*, quoting *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 691 (6th Cir. 1994). An organization can satisfy the injury-in-fact requirement when the challenged conduct has frustrated the organization's mission and caused the organization to divert resources from other projects or to devote additional resources in order to combat the challenged conduct. *Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. 1993); *Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 646 (6th Cir. 1991). However, "an organizational plaintiff * * * must demonstrate that the 'purportedly illegal action increases the resources the groups must devote to programs independent of its suit challenging the action.' " *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021), quoting *Housing Opportunities Made Equal*, at 646.

### 1.  The Bail Fund's organizational purpose has not been frustrated by the alleged constitutional violations in this case.

An organization's mere interest in a problem is insufficient to confer standing upon an organization. *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, 56 F.3d 710, 716 (6th Cir. 1995). "A plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)], 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest on behalf of the public, *Hollingsworth* v. *Perry*, 570 U.S. 693, 704, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013)." *Carney v. Adams*, 141 S.Ct. 493, 499, 208 L.Ed.2d 305 (2020). Instead, an organization "must establish 'that its ability to further its goals has been "perceptively impaired" so as to constitute [ ] [*sic.*] far more than simply a setback to the organization's abstract interests.' " *Greater Cincinnati*, at 716, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

The Bail Fund alleges that "its mission, and its individual members and the people it serves have been and continue to be harmed by the ongoing suppression of protester speech and violence against protesters by the City of Akron." (Complaint, at ¶ 10). It is unclear how an organization that is dedicated to raising bail funds for individuals has been harmed in violation of the First and Fourth Amendments. The Bail Fund's own allegations affirmatively demonstrate their mere interest in an alleged unconstitutional practice or policy of the City. And this mere interest bears only a minimal relation to the Bail Fund's actual purpose of supporting criminal defendants. In its first cause of action alleging First Amendment violations, the Bail fund generally alleges that the City has "infringe[d] upon the rights of the Plaintiffs and the public at large." (Complaint, at ¶ 61). However, at no point in the Complaint does the Bail Fund allege that its own speech has been suppressed by the City. The same is true of the Bail Fund's second cause of action alleging Fourth

Amendment violations. The Bail Fund generally alleges that the City used excessive force in violation of the Fourth Amendment against protesters. (Complaint, at ¶ 43-46, 69). Once again, however, the Bail Fund itself does not allege that it, as an organization, was subjected to excessive force.

The Bail Fund's social media pages demonstrate that its purpose is to provide bail funds to those arrested and to have court observers present at various stages in the prosecution of criminal defendants.[5] [6] However, the majority of the Bail Fund's Complaint is devoted to allegations that the City made public fora unavailable to demonstrators (Complaint, at ¶ 22), deterred individuals from attending protests (*Id.* at ¶ 37, 39-40), and "suppressed speech via unlawful use of force" (*Id.* at ¶ 57). Nowhere in its Complaint does the Bail Fund allege that its actual purpose has been frustrated by this alleged conduct of the City. Nor does the Bail Fund allege any future injury that it may suffer as the result of the City's alleged conduct.

In *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, the Sixth Circuit affirmed the district court's conclusion that the Plaintiff organization lacked standing because its mere interest in providing relief to the homeless or of educating the public about the plight of the homeless was not frustrated by Cincinnati's enactment of a statute forbidding reckless interference with traffic by soliciting. 56 F.3d, at 716-717. The same is true of the Bail Fund, whose purpose of providing financial assistance to arrested individuals is not frustrated by alleged free speech or excessive force violations.

Additionally, in *Equal Means Equal v. Dept. of Education*, a district court concluded that EME, an organizational plaintiff, whose sole mission was to "advocate for the equal treatment of

---

[5] Akron Bail Fund Linktree: https://linktr.ee/akronbailfund
[6] Akron Bail Fund Action Network Account:  https://actionnetwork.org/fundraising/support-the-akron-bail-fund

victims of sex-based harms," lacked standing to challenge a Department of Education policy permitting educational institutes to apply a heightened standard of proof in proceedings concerning sex-based harms. 450 F.Supp.3d 1, 3-4, 7 (D.Mass. March 18, 2020). The court concluded that EME could not establish standing simply because it had a special interest in the subject of the Department of Education's action. *Id.* at 7. Like EME, the Bail Fund has only a special interest in the demonstrations and protests that are the subject of this matter. This is insufficient to establish direct standing.

The Bail Fund cannot demonstrate that its organizational purpose has been frustrated beyond its mere general interest in the constitutional rights of protesters. Accordingly, it lacks standing in this matter and, therefore, this Court does not have subject matter jurisdiction.

### 2. The Bail Fund has not devoted resources to the conduct that it is challenging in this case.

To establish standing, "an organizational plaintiff * * * must demonstrate that the 'purportedly illegal action increases the resources the groups must devote to programs *independent of its suit challenging the action.*' " Cameron, 995 F.3d at 547, quoting *Housing Opportunities Made Equal*, 943 F.2d at 646 (Emphasis added). There is no indication that the Bail Fund has diverted *any* resources beyond the filing of this lawsuit or otherwise suffered any injury as an organization as a result of the alleged conduct. The Bail Fund did not organize the protests at issue in its Complaint. [need citation]. Furthermore, the Bail Fund has not established how its allegations of First Amendment and Fourth Amendment violations against protesters resulted in it having to its divert resources in response to the City's alleged conduct. In fact, the Bail Fund only generally mentions a diversion of resources is in its prayer for relief. (Complaint, at p. 12). This conclusory assertion is insufficient to establish that the Bail Fund has suffered an injury that would vest it with organizational standing in this case.

Accordingly, the Court is without subject matter jurisdiction.

**B.  The Bail Fund does not have associational standing.**

"An organization may sue on behalf of its members if it shows that: (1) its 'members would otherwise have standing to sue in their own right;' (2) the 'interests' that the suit 'seeks to protect are germane to the organization's purpose;' and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Ass'n. of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 537 (6th Cir. 2021), quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The Bail Fund cannot establish any of these elements and, therefore, it does not have associational standing.

The Bail Fund alleges First and Fourth Amendment violations in this case.

**1.  The Bail Fund does not have members.**

An organization that does not have members whose claims it might raise cannot establish associational standing. *Hunt*, at 342 ("Thus, since the Commission has no members whose claims it might raise, and since it has suffered no 'distinct and palpable' injury to itself, it can assert no more than an abstract concern for the well-being of the Washington apple industry as the basis for its standing."). The Complaint alleges no *facts* from which this Court can plausibly infer that the Akron Bail Fund has actual members. The Complaint only contains conclusory statements that it has members without providing any factual support for same. *See* Complaint at the introduction, ¶ 6, 7, 10, 26, 50, 53, 54, 58 (Doc #1). Plaintiff's anonymous social media and fundraising presence on the internet do not discuss membership in any capacity. As such, Plaintiff has no associational standing to proceed with its lawsuit under the First Amendment or Fourth Amendment. Courts have consistently held that *actual members* are necessary for associational standing to be established. *See Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 809-10 (8th Cir.

8

2007) (holding that an organization lacked associational standing on behalf of its clients because they were not members); *Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (same); *see also Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002) (holding that an organization that claimed to "represent[] an 'informal consortium' of various groups" lacked associational standing because "these groups [were not] the equivalent of members").

The allegations in the Complaint are devoid of any factual allegation that Bail Fund "members" have suffered an injury. Instead, the Bail Fund alleges conduct against "protesters" (Complaint, at ¶ 16), "demonstrators" (Complaint, at ¶ 26), or unspecified "people" (Complaint, at ¶ 37). Such allegations "fall far short of asserting that any of plaintiffs' members have suffered or will imminently suffer a concrete, actual injury[.]" *Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006).

Assuming, arguendo, that the Bail Fund has members, it has not met its burden of establishing that even one of those members would have standing to sue in their own right. "[A]n organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member[.]" *Am. Physicians and Surgeons*, at 543. "The organization must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.*

Accordingly, because the Bail Fund has no actual members and, even if it did, it has failed to identify a member who has been harmed by the alleged conduct, it does not have associational standing in this matter.

9

**2.  The interests at issue in this case are not germane to the Bail Fund's purpose.**

The Bail Fund makes generalized allegations that it is "a nonprofit organization comprised of members who engage in peaceful protests, support others who do so, post bond for individuals who are arrested in connection with such protests, and otherwise help protect and support demonstrators." (Complaint, at ¶ 10). This purpose is considerably broader than the Bail Fund's actual and sole purpose of providing bail funds to those arrested and to have court observers present at various stages in the prosecution of criminal defendants.[7] [8] Additionally, the lack of information in the Complaint does not establish that the Bail Fund's purpose is germane to this interests of this case. *See Blackwell*, at 1011 ("The scanty information about the plaintiff organizations in the complaint also raises substantial questions about whether the interests at stake here are germane to the organizations' purposes, which clearly are not primarily related to election or voters' rights issues.").

The Bail Fund's purpose of assisting criminal defendants is not germane to the First and Fourth Amendment claims it has brought in this case. Therefore, the Bail Fund cannot meet the second element required for associational standing. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Ag.*, 415 F.3d 1078, 1103-1104 (9th Cir. 2005) (Dismissing an associations National Environmental Protection Act claims on standing grounds, finding that the association's purpose of representing cattle producers on issues of trad and marketing was not germane to its environmental claims).

---

[7] Akron Bail Fund Linktree: https://linktr.ee/akronbailfund
[8] Akron Bail Fund Action Network Account:  https://actionnetwork.org/fundraising/support-the-akron-bail-fund

**3. The asserted claims and the requested relief in this case require the participation of individuals in this matter.**

The Bail Fund brings two causes of action in this case: First Amendment violations and Fourth Amendment excessive force violations. Both require the participation of individual members. The injunctive relief and monetary damages sought by the Bail Fund also requires individual participation. Therefore, the Bail Fund does not have associational standing in this matter.

**a. First Amendment Retaliation Claim**

Although it is unclear from its Complaint, the Bail Fund's First Amendment claim appears to be a retaliation claim. Under a First Amendment retaliation claim, the plaintiff must show: " '(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.' " *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010), quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004). The Bail Fund, however, asserts its First Amendment claims on the legal right of third parties, i.e., unidentified, individual protesters, whose speech has allegedly been chilled. *See* Complaint at ¶ 21 ("some would-be protestors who the Akron Bail Fund seeks to help and protect were chilled"); ¶ 37 ("fewer people came out to express their message because they were chilled"); ¶ 40 ("response to demonstrations the previous day had chilled individuals from coming back"); ¶ 55 ("some people who were previously planning to attend the April 20 gathering and subsequent demonstrations will now not attend, because their

11

freedom of speech and expression has been chilled") The Bail Fund makes no claim that it has engaged in protected activity or that *its own* speech has been chilled, as required to establish a First Amendment retaliation claim. *Accord. Paige*, at 277. Because the Bail Fund itself was not chilled and it seeks only to represent others who it believes have been chilled, it "clearly lack[s] that 'personal stake in the outcome of the controversy' essential to standing." *Laird v. Tatum*, 408 U.S. 1, 13 n.7, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972), *quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *see also Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005) (holding that the plaintiff lacked standing on her First Amendment claim because "[h]er only claim of injury is that, as a resident and taxpayer, she is subject to the effects of the [challenged] Policy [which] has a chilling effect on the speech of others").

To pursue a First Amendment claim, it is necessary for the individuals whom the Bail Fund rests its First Amendment claims on, to participate in the lawsuit. As such, Plaintiff lacks associational standing to pursue its First Amendment Claims.

### b. Fourth Amendment Excessive Force Claim

In its Fourth Amendment claim, the Bail Fund alleges that the City's use of "less-lethal" weapons on protests "constitutes excessive force in violation of the Fourth and Fourteenth Amendments." (Complaint, at ¶ 69). Notably, neither the Supreme Cort nor the Sixth Circuit has affirmatively recognized associational standing for a Fourth Amendment excessive force claim. Like its First Amendment claim, the excessive force claim also necessitates the participation of individuals in this case.

It is a "general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969). "[A]ll claims that law enforcement officers have

12

used excessive force -deadly or not- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen, should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395 (1989). "In determining a seizure's reasonableness, the Court balances the nature and quality of the intrusion on the *individual's* Fourth Amendment interests against the importance of the governmental interests allegedly justifying the intrusion." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 1769, syllabus (2007) (Emphasis added). "Ascertaining whether force was excessive in any given case, however, is a fact-intensive inquiry, one that requires balancing the governmental interest at stake with the extent of the intrusion upon the individual." *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 917 (6th Cir. 2020), *citing Graham*. For this balancing test, courts look to "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Jones* at 917, *citing Est. of Hill by Hill v. Miracle*, 853 F.3d 306 (6th Cir. 2017). This inquiry requires an individualized examination into the individuals whom the Bail Fund alleges had their Fourth Amendment rights violated.

The Bail Fund does not allege that the City used excessive force against it as an organization, and the Bail Fund cannot attempt to bring this highly particularized claim on behalf of individuals because doing so requires participation of those individuals.

### c. The Bail Fund's requested relief requires the participation of individuals.

The Bail Fund is seeking injunctive relief, as well as monetary damages in this matter. Article III requires the remedy to be limited to the plaintiff's actual injuries. *American Physicians & Surgeons*, 13 F.4th at 540. As argued above, the Bail Fund has not suffered an injury in fact in this matter and, therefore, any remedies require the participation of individuals.

13

Notably, the Bail Fund is seeking damages on behalf of its members in this case. In its prayer for relief, the Bail Fund requests "individual physical and mental pain and suffering, punitive damages, and other damages[.]" (Complaint, at p. 12). "The requirement of individual participation has been understood to preclude associational standing when an organization seeks damages on behalf of its members." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758, syllabus (1996).

Nor can the Bail Fund seek injunctive relief without the participation of individuals. To establish entitlement to a permanent injunction, the plaintiff must show that it has suffered an irreparable injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.ed 641 (2006). As stated above, the Bail Fund has not suffered any injury which would confer standing. Therefore, any determination as to injunctive relief would require participation of individuals whom the Bail Fund alleges were harmed during protests. Additionally, in order to satisfy Article III's redressability requirement, "the injunctive relief in an associational-standing case must benefit (and ameliorate an injury to) the association's members." *American Physicians & Surgeons*, at 540. As argued above, the Bail Fund does not have members; therefore, it is not entitled to injunctive relief because it would not benefit any members.

The Bail Fund does not have associational standing in this matter. Therefore, the Court is without subject matter jurisdiction.

### CONCLUSION

The Akron Bail Fund lacks standing in this matter, both in its own right and on behalf of its members. Accordingly, and for the foregoing reasons, this Court does not have subject matter jurisdiction and, therefore, must dismiss this matter.

Respectfully submitted,

Eve V. Belfance
Director of Law

/s/ Brian D. Bremer

John Christopher Reece – No. 0042573
Deputy Director of Law
Michael J. Defibaugh – No. 0072683
Brian D. Bremer – No. 0087363
Assistant Directors of Law
161 S. High St., Suite 200
Akron, Ohio 44308
(330) 375-2030
(330) 375-2041 (fax)
jreece@akronohio.gov
mdefibaugh@akronohio.gov
bbremer@akronohio.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 30, 2023, a copy of the foregoing Motion to Dismiss was filed through the this Court's electronic filing system, which will send notice of the filing to the following:

Sarah Gelsomino
Elizabeth Bonham
Friedman, Gilbert + Gerhardstein
50 Public Square, Ste. 1900
Cleveland, OH 44113
elizabeth@fggfirm.com
sarah@fggfirm.com
*Attorneys for Plaintiff*

/s/ Brian D. Bremer
Brian D. Bremer – No. 0087363
Assistant Director of Law