# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**THE AKRON BAIL FUND,**

        Plaintiff,

v.

**THE CITY OF AKRON,**

        Defendant.

Civil Action No. 5:23-cv-837
Judge: Fleming
Magistrate Judge: Grimes

## Plaintiff's Opposition to Defendant's Motion to Dismiss

Plaintiff, the Akron Bail Fund, filed this § 1983 case against the City of Akron as an emergency measure seeking to end Akron's policy and practice of suppressing protest speech. Akron moved to dismiss for lack of subject-matter jurisdiction, contending that the Bail Fund lacked standing to bring suit as a factual matter. The Bail Fund now opposes Akron's Motion because it has standing to bring this case in its own right and on behalf of its members. For the reasons set forth below, the Court should deny Akron's Motion (ECF No. 22).

## I.      Background

### A.  Procedural History

The Bail Fund filed its Complaint together with a Motion for Temporary Restraining Order on April 20, 2023. (ECF Nos. 1 and 2). The Bail Fund filed these pleadings within hours of Akron Police teargassing and arresting the Bail Fund's members and other political protestors who the organization is devoted to supporting, as an attempt to stop Akron's then-ongoing censorship by force. After this Court held an emergency hearing on the TRO Motion, the parties agreed to a temporary stipulation, and later a stipulation lasting for the pendency of this litigation, barring

Akron from continuing its unconstitutional conduct. (ECF Nos. 11, 16.) The Court entered these stipulations as its Orders. (ECF Nos. 14, 17.) In the meantime, Akron answered the Complaint (ECF No. 21) and filed the subject Motion to Dismiss (ECF No. 22). The sole basis for Akron's Motion is that based upon the facts before it, the Court lacks subject-matter jurisdiction over this dispute because the Bail Fund does not have standing. (*Id.*)

### B. Fact Summary

The Akron Bail Fund is a small not for profit organization in Akron which is devoted to "support[ing] the liberation of locals and protestors from the burden of the criminal legal system through direct aid efforts and police brutality victim assistance." (Declaration of Paul Wilson at ¶4, attached as Exhibit 1; Akron Bail Fund Fiscal Sponsorship Agreement at 1, attached as Exhibit 2; Declaration of Natalia Wyrd at ¶3, ECF No. 21, PAGEID# 2930.) A large part of this mission is to protect and support political protestors, and many of the Bail Fund's members are themselves protestors. (Wilson Decl. at ¶5; *see also* Wyrd Decl. at ¶¶45.) The Bail Fund fundraises and its members volunteer to support this mission. (Wilson Decl. at ¶¶79.) The Bail Fund carries out its mission by, among other things, helping protestors to post bail if arrested and jailed, providing direct support and advocacy for protestor-victims of police violence, performing a court watching function for those prosecuted for protesting, educating people on their rights to freedom of speech and assembly, advocating for the right of community members to protest, and having Bail Fund members join in and organize protests. (Wilson Decl. at ¶7; Wyrd Decl. at ¶¶45; *see also* Declaration of Danielle Taylor, ECF No. 21, PAGEID#3435, Declaration of Ryan Keen, ECF No. 21, PAGEID#36, Declaration of Tamara Coteat, ECF No. 21, PAGEID# 32.)

The City of Akron has harmed the Bail Fund itself, and its members, and the public, through its policy and practice of suppressing political protest speech in Akron including through

the unlawful use of force. Akron's hostility toward protests and protestors has frustrated the Bail Fund's mission by interfering with its and its members' ability to protest and to support and educate people in exercising their right to protest. (Wilson Decl. at ¶¶1217, Wyrd Decl. at ¶¶67, 12.) Akron's hostility toward protests and protestors has forced the Bail Fund to divert a major portion of its financial resources and time to bailing protestor arrestees out of jail, helping them travel home from jail, and helping them heal and supporting them after they endure wrongful arrest and physical police violence. This has detracted from the Bail Fund's ability to grow and satisfy other aspects of its mission including education and working toward the liberation of *all* people from Akron's criminal-legal system. (*Id.*) Akron's hostility toward protests and protestors has also harmed the Bail Fund's individual members and the members of the public they seek to assist, who themselves are protestors whose voices Akron has silenced through force and unlawful arrest. (*Id.*; *see also* Taylor Decl., Keen Decl., Coteat Decl.) Should the Bail Fund prevail in this litigation, the financial relief sought would compensate its constitutional injuries and some of the resources it has spent as a result of Akron's speech-suppression policy and practice. The injunctive relief sought would protect the Bail Fund and its members and those they serve from further speech suppression, allowing them to protest and fulfil their organization's mission without impediment or fear. (*See* Compl. ECF No. 1 at ¶¶6, 10, 21, 35, 37, 50, 5358, 6667, 7273, Prayer for Relief at E; Wilson Decl. ¶¶1415.)

With respect to the facts underlying Akron's policy and practice of speech suppression and its impact on the Bail Fund and its members leading to this litigation, the Bail Fund incorporates by reference the facts as they are set forth in its verified Complaint[1] and its Motion for Temporary Restraining Order as well as the declarations and documentation filed in support of Plaintiff's TRO

---

[1] Plaintiff has filed a declaration verifying its Complaint on August 21, 2023 (ECF No. 27.)

Motion and this Opposition.

## II.     Standard of Review

The standard of review governing this Motion is unusual. Akron styles its Motion as one made under Rule 12(h)(3), which is not a basis for a motion to dismiss, but rather requires the Court to dismiss a case over which it lacks subject-matter jurisdiction. However, the Court may construe Akron's Motion as made under Rule 12(b)(1), the vehicle for a motion to dismiss for lack of subject-matter jurisdiction. Typically, under Rule 12(b)(1), the Court tests the sufficiency of the pleadings. *See, e.g., United States v. Ritchie,* 15 F. 3d. 592, 598 (6th Cir. 1994). However, Akron specifies that its Motion is not directed at the sufficiency of the pleadings, but rather only challenges the "factual existence of subject-matter jurisdiction." (Def.'s Mot., ECF No. 22 at PAGEID#109, citing *Cartwright v. Garner,* 751 F.3d 752, 759 (6th Cir. 2014).) Therefore, although the facts are undeveloped in this litigation's pre-discovery posture, Akron asks this Court to find that the Bail Fund lacks standing based upon the facts alone. *Id.*

Such a motion is not directed at the pleadings, but rather attacks the facts underlying the assertion of jurisdiction by presenting competing facts. C. Wright & A. Miller, Federal Practice and Procedure § 1350 (3d ed. April 2021). The Court evaluates the evidence both parties present and "weigh[s] the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). Here, that evidence is as follows: for Defendant, one affidavit attached to its Motion which certifies that an Akron employee performed web searches and drew conclusions as to the Bail Fund's mission and structure; for Plaintiff, the verified Complaint, the declarations attached to its Motion for a Temporary Restraining Order, and the declarations and organizational documents appended to this Opposition. Based upon these facts, the Court should

find that the Akron Bail Fund has standing.[2]

### III.    Argument

Akron contends that facts in this case do not support the Bail Fund's standing, either in its own right or on behalf of its members. As set forth below, the Bail Fund has both direct standing and associational standing. The Court should deny Akron's Motion and allow this case to be adjudicated on its merits.

### A.  Organizational Standing Requirements

As the United States Supreme Court has explained, Article III's standing requirements are relaxed in First Amendment cases like this one, where it is prudent to permit organizational plaintiffs to bring challenges that protect the social good:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

*Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 956 (1984).

Fundamentally, to establish Article III standing, a plaintiff must show (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and is (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff seeking declaratory or injunctive relief must also "show actual present harm or a significant possibility of future harm." *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Nat'l Rifle*

---

[2]If this Court determines that the disposition of this Motion would benefit from discovery, additional testimony, or other fact development, the Court may deny the motion, deny the motion without prejudice to refiling it once the facts are more developed, or hold the motion in abeyance until the facts are more developed. *See Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir. 1981) (collecting cases). Should the Court determine that the scant record here renders adjudicating standing on the facts premature, the Court could take one of those measures.

*Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

An organizational plaintiff may demonstrate standing either in its own right, *Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016), or on behalf of its members. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). "To establish direct standing to sue in its own right, an organizational plaintiff…must demonstrate that the 'purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.'" *Online Merchants Guild v. Cameron,* 995 F.3d 540, 54748 (6th Cir. 2021) (citations omitted) (organization had standing where director attested, in declaration, that it expended resources in response to challenged state action). To establish associational standing through its members, an organization must show that "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *Laidlaw,* 528 U.S. at 181 (organization had standing where members attested, in sworn statements, to their own concrete injuries).

Here, the Bail Fund filed First Amendment and constitutional excessive force claims against Akron, seeking damages and declaratory and injunctive relief, and it has standing in its own right and on behalf of its members with respect to both claims and all forms of relief.

### B.  The Bail Fund has standing in its own right.

The Bail Fund has standing because Akron's policy and practice of speech suppression and excessive force has caused it concrete injury by "increase[ing] the resources the group must devote to programs independent of its suit challenging the action," and because the relief sought here

would redress that. *Cameron,* 995 F.3d at 54748. Akron's First and Fourth Amendment violations against protestors frustrate the Bail Fund's mission by, for instance, interfering with its ability to "educat[e] people on their rights to freedom of speech and assembly, advocat[e] for the right of community members to protest, hav[e its] members themselves join in and organize protests." (Wilson Decl. at ¶7.) To respond to Akron's protest censorship, particularly around the Justice for Jayland protests this year, the Bail Fund has diverted "a significant amount" of its volunteer time and financial resources to supporting protestor arrestees and protestor-victims of police use of force. (*Id.* at ¶13) The Bail Fund seeks damages to compensate the violation of its constitutional rights and the diversion of its resources in response to Akron's unconstitutional policy, and injunctive and declaratory relief to put a stop to this policy and practice. (*See* Compl. at ¶¶5058, Prayer for Relief.) The relief sought would compensate past injury and mitigate future harm, allowing the Bail Fund to grow and fulfill its entire mission, not just protest support. (Wilson Decl. at ¶¶1416.) In these ways, the Bail Fund demonstrates concrete injury, traceable to Akron's at-issue policies, redressable in this Court, and the organizational injury is far from "abstract." *Cf. Fair Elections Ohio v. Husted,* 770 F.3d 456, 461 (6th Cir. 2014).

Akron argues that its unconstitutional policy and practice does no harm to the Bail Fund, but identifies no real facts in support of its position. (Def.'s Mot. at 57.) As set forth above, a core piece of the Bail Fund's mission is to support, educate, and advocate for the same political protestors who are censored under Akron's speech suppression and force policy. The Bail Fund has diverted its time and money to combating this. The sworn statements in the record bear this out and Akron cites no conflicting evidence. Moreover, to the extent Akron argues that the Bail Fund must demonstrate the suppression of its own speech, or the use of excessive force against it, this misapprehends the relevant inquiry. (Def.'s Mot. at 1113.) Instead, the Bail Fund must show,

and has shown, that it is harmed by Akron's unconstitutional conduct through the harm to its mission and diversion of its resources. *Cameron,* 995 F.3d at 54748. For these reasons, the Akron Bail Fund has direct standing to bring this litigation, and Akron's arguments to the contrary fail.

### C.  The Bail Fund has associational standing because its members have standing.

The Bail Fund has associational standing because "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw,* 528 U.S. at 181. The Bail Fund identifies multiple individual members who have provided sworn testimony in support of the First and Fourth Amendment claims in the Complaint, including describing the injuries against them and the redress that a permanent injunction would provide. (Wilson Decl. ¶¶6, 17, Wyrd Decl. ¶¶6, 812, Taylor Decl., Keen Decl., Coteat Decl., Compl. at ¶¶21, 5058, Prayer for Relief.) The Bail Fund has explained how its members' interests at issue in this case are integrally bound up with its own mission of protecting and supporting protest speech. (Wilson Decl. ¶¶12, 1416, Wyrd Decl. ¶¶47, 12.) And the Bail Fund is well suited to stand in for the interests of those members, whose individual participation is unnecessary to fully pursue the two causes of action or to obtain the relief sought. Indeed, because the Bail Fund maintains its membership roster as private given member fears over retaliation against their protest messages, the organization is better suited to seek relief than the individuals. (Wilson Decl. ¶1011.) This case, involving two constitutional claims for injunctive relief which would benefit the organization's entire membership as well as the public, has all the qualities the United States Supreme Court has recognized as making organizational plaintiff standing prudent. *See Joseph H. Munson Co., Inc.,* 467 U.S. at 956.

Akron argues that the Bail Fund lacks associational standing because it "has no members,"

because the claims here are not germane to the Bail Fund's "actual and sole purpose," and because the organization cannot stand in for its individual members to obtain the relief sought; each of these arguments fails. (Def.'s Mot. at 810.) First, as set forth above, the facts before the Court establish that the Bail Fund is comprised of members whose volunteer labor fuels the organization's work and whose votes control its operations. (Wilson Decl. ¶¶79; Exhibit 2 at 12.) This is sufficient to confer standing. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College,* 143 S. Ct. 2141, 2158 (2023) (rejecting rigid membership analysis to prove standing, finding where "an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates.")[3] Second, as discussed above, stopping Akron's policy and practice of suppressing protest speech, including through stopping its unlawful uses of force against protestors, goes to the core of the Bail Fund's mission and Akron's assertions to the contrary are not rooted in evidence. (*See* Wilson Decl. ¶4; Wyrd Decl. ¶3; Exhibit 2 at 1.) Finally, Akron argues that the Bail Fund cannot establish associational standing because its claims for damages and injunctive relief both require the actual participation of its individual members. (Def.'s Mot. 14.) With respect to damages, Plaintiff has represented that it is not seeking damages for its individual members in this litigation, and Plaintiff expressly abandons any such claim for relief here. Plaintiff seeks damages for its constitutional injuries and its diversion of resources. This does not demand participation of individuals in the lawsuit and Akron does not argue otherwise. With respect to injunctive relief, Plaintiff's counsel is not aware of any Court that has ever held that a claim for injunctive relief is a bar to associational

---

[3] Even were the Bail Fund not a membership based organization at all, this would not bar associational standing, as the United States Supreme Court clarified just this summer. *Students for Fair Admission,* 143 S. Ct. at 2158; *see Hunt v. Wash. State Apple Advertising Comm'n,* 432 U.S. 333, 34243 (1977) (Commission with no members had associational standing to raise constitutional challenge to state policy).

standing, and Akron does not identify any. Indeed, such a proposition would contravene this Circuit's longstanding precedent recognizing organizational litigants' interests in vindicating their members' First Amendment rights through injunctive and declaratory relief. *See, e.g., Memphis A. Philip Randolph Inst. v. Hargett,* 2 F.4th 548, 556 (6th Cir. 2021) (voting rights organization had associational standing to seek injunction in constitutional litigation). For these reasons, the Akron Bail Fund has associational standing to bring this case, and Akron's arguments to the contrary fail.

### D.  In the alternative, the Court should either find the Bail Fund has standing based upon its allegations or allow the Bail Fund to amend the Complaint.

Should this Court decide to consider the sufficiency of the pleadings despite Akron's express declination to make such a challenge, the Court should find that the Akron Bail Fund has adequately alleged both direct and associational standing. (*See* Compl., ECF No. 1 at ⁋⁋6, 10, 21, 35, 37, 50, 5358, 6667, 7273, and Prayer for Relief at E (alleging concrete injuries traceable to Defendant's conduct and the redress sought from this Court) and Compl. at ⁋7 (incorporating by reference Plaintiff's Motion for a Temporary Restraining Order and evidence in support).) The allegations in the Complaint, when taken in the light most favorable to the Plaintiff, and particularly when taken in light of the record evidence referred to in the Complaint, are more than adequate to satisfy pleading standards at this stage of the litigation. *See Ritchie,* 15 F. 3d. at 598.

In the alternative, should the Court find Plaintiff's allegations insufficient to support its standing, the Court should permit Plaintiff to amend its Complaint. Federal Rules of Civil Procedure 15 and 16 support this course, as does the Court's "preference for deciding cases on their merits." *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). Rule 16(b)(4) permits amendment where Plaintiff is diligent in seeking to amend and where amendment will not prejudice the opposing party. Here, Plaintiff has shown diligence in marshalling the evidence that supports its standing despite the early stage of the case. Plaintiff filed its Complaint as an

emergency measure to enjoin ongoing civil rights abuses, and is able to develop its claims further only now that Akron has agreed to such an injunction. Further, amendment would not prejudice Akron because it would not affect the claims or parties at issue but rather would simply add allegations to support the standing Plaintiff has shown itself to possess. Even if amendment affected the scope of the litigation, this case is in its infancy with the parties not having begun discovery, and a change at this early stage would not render any effort wasted by either party.

In addition, Rule 15(a)(2), which directs the Court to "freely give leave when justice so requires," would permit amendment here. Plaintiff filed this litigation because its organization, its members, and the Akron community will be irreparably harmed should Akron's now-enjoined speech suppression and excessive force policies resume. If the Court dismisses Plaintiff's case for insufficiently pleading its own standing, Plaintiff or one of its members or another similarly harmed individual may refile an identical case; Plaintiff is well within the statute of limitations. This Circuit has a preference for deciding cases on their merits and for avoiding the burden to the justice system that technical dismissals such as this would wreak. *Thacker,* 328 F.3d at 244.

For these reasons, if the Court is inclined to consider the sufficiency of the pleadings as to standing, the Court should still deny Akron's Motion, or in the alternative, the Court should permit Plaintiff to amend the Complaint and cure any pleading deficiency.

## IV.     Conclusion

This is not the case where an organizational plaintiff sues to redress harm that merely affects "abstract social interests." *Cf. Fair Elections Ohio v. Husted,* 770 F.3d 456, 461 (6th Cir. 2014). Here, the Akron Bail Fund has demonstrated that Akron's speech suppression and excessive force policies frustrate its mission and force it to divert an outsized fraction of its resources to combating constitutional violations, and that the relief it seeks would ameliorate this damage. The

Bail Fund has additionally shown that Akron's policies have suppressed and chilled the speech of its individual members and have physically harmed them, and that ending those policies would alleviate that harm now and in the future. For all the reasons set forth above, the Court should deny Akron's Motion to Dismiss (ECF No. 22), allow the Bail Fund to develop its claims, and adjudicate this case on its merits.

Respectfully submitted,

/s/ Elizabeth Bonham
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FRIEDMAN GILBERT +
GERHARDSTEIN
50 Public Square Suite 1900
Cleveland, Ohio 44113
T: (216) 241-1430
F: (216) 621-0427
sarah@FGGfirm.com
elizabeth@FGGfirm.com

Counsel for Plaintiff

**Certificate of Service**

I certify that on August 21, 2023 I filed a copy of the foregoing joint filing using the Court's CM/ECF system and that all counsel of record will receive service through that system.

/s/ Elizabeth Bonham
Elizabeth Bonham (0093733)
One of the attorneys for Plaintiff