## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("AGREEMENT") is entered into between the Plaintiff Akron Bail Fund ("PLAINTIFF") and the Defendant City of Akron ("DEFENDANT") (collectively, the "PARTIES").

## RECITALS

A. PLAINTIFF filed a complaint in the United States District Court, Northern District of Ohio, Eastern Division, styled *Akron Bail Fund v. City of Akron*, Case No. 5:23-cv-00837. This action is referred to as the "LITIGATION".

B. PLAINTIFF alleged in the LITIGATION that the DEFENDANT violated the rights of PLAINTIFF and its members under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America and the Ohio Constitution.

C. DEFENDANT denies PLAINTIFF'S allegations and denies any and all liability for damages in connection with the LITIGATION.

D. The PARTIES understand, acknowledge, and intend that this AGREEMENT represents a compromise of disputed claims and is not to be construed as an admission of liability on the part of any party referred to herein.

E. The PARTIES recognize that this AGREEMENT applies only to the PARTIES and that this AGREEMENT and resulting policy or policies do not affect other political subdivisions, governmental entities, or law enforcement jurisdictions.

## AGREEMENT

THEREFORE, the PARTIES to this AGREEMENT hereby agree, settle, and acknowledge as follows:

1. The DEFENDANT agrees to draft, implement, and train its police officers on a policy or policies governing police interactions with people and groups involved in First Amendment protected activity in the City of Akron (for purposes of this AGREEMENT this/these are referred to as the "POLICY").

   a. As part of this process, DEFENDANT shall retain an expert or experts in police practices to consult in the drafting of the POLICY. The expert or experts shall be jointly agreed upon by the PARTIES within 45 days of this AGREEMENT being executed.

   b. DEFENDANT shall also conduct public outreach to allow the residents of the City of Akron to provide feedback and comment on the proposed POLICY.

      i. Public outreach shall include at least one community forum to occur prior to policy language being drafted. A facilitator for at least one such forum shall be jointly agreed upon by the PARTIES. The location for that forum shall be at a place and time sufficiently accessible for all members of the public who wish to are able to attend and participate.

      ii. Public outreach shall also include a public comment period consisting of no less than 60 days after policy language is drafted. DEFENDANT shall create a

        process for the public comment period that is sufficiently accessible for all members of the public who wish to provide comment to do so. The process will also ensure that comments are recorded and retained and become a matter of public record.

    c. As part of the public comment period set forth in paragraph 1(b)(ii), DEFENDANT will also provide a draft of the POLICY to PLAINTIFF and PLAINTIFF will provide feedback on the proposed POLICY.

2. Following the public forum and comment period and after PLAINTIFF has had the opportunity to provide its feedback, the DEFENDANT will finalize the POLICY, making any changes the DEFENDANT and the expert determine are appropriate based upon public input and feedback from the PLAINTIFF. The DEFENDANT will enact the POLICY prior to March 31, 2025.

3. Notwithstanding the provisions in (1) and (2) above, the POLICY that DEFENDANT ultimately enacts will contain the following minimum requirements for police conduct with respect to protests, demonstrations, or other gatherings of people who are exercising their First Amendment rights in the City of Akron:

    a. The POLICY will limit police use of force, including less lethal weapons, and other adverse action, against people who are engaged in First Amendment protected activity.

3

      b. The POLICY will prohibit police from taking any adverse action, including but not limited to use of force or temporary detention, on the sole basis that a person was exercising their First Amendment rights.

      c. The POLICY will require police to ensure that body worn cameras, vehicle cameras, and any other police recording devices are charged, working, and turned on during any police interaction with persons who are, or who immediately prior to the interaction were, exercising their First Amendment rights, to the extent permitted by the relevant technology.

      d. The POLICY will prohibit police from knowingly circumventing or attempting to circumvent any POLICY requirements through the use of mutual aid law enforcement agreements.

4. The DEFENDANT shall provide notice of the enacted POLICY through publication of the POLICY on the website of the City of Akron Department of Public Safety, Police Division as well as the City of Akron's social media accounts. DEFENDANT shall also notify PLAINTIFF when the POLICY is implemented by writing to PLAINTIFF'S counsel.

5. Until the date on which the POLICY is enacted and publicized pursuant to the above provisions, the same terms set forth in the agreed Order

4

entered as ECF No. 17 in this LITIGATION will remain in effect under this AGREEMENT.

6. DEFENDANT shall require all of its police officers to undergo training on the POLICY. DEFENDANT will ensure this training occurs within one year of the POLICY being enacted. DEFENDANT will require police officers who are unable to complete the training within the one year to complete the training as soon as practicable. DEFENDANT will subsequently incorporate the POLICY into any pre-existing police training such that training on the POLICY continues to occur annually and for any new police.

7. DEFENDANT agrees to pay $30,000 as and for PLAINTIFF'S attorney fees and costs (the "FEE SUM"). The PARTIES agree that DEFENDANT will not pay fees or costs incurred after this AGREEMENT is executed. In other words, DEFENDANT will not pay any fees and costs that PLAINTIFF'S counsel may incur in the course of performing the terms of the AGREEMENT and PLAINTIFF will not seek them. DEFENDANT will pay that FEE SUM in the form of a check made payable to the law firm Friedman, Gilbert + Gerhardstein LLC delivered to 50 Public Square Suite 1900, Cleveland, OH 44113 within 30 days of the execution of this AGREEMENT.

8. Within five (5) days of receipt of the FEE SUM, the PARTIES will move the Court to enter an order approving this AGREEMENT and maintaining jurisdiction over this matter in order to enforce this AGREEMENT and to dismiss the action.

9. It is the intention of the PARTIES that, once the DEFENDANT has performed the terms set forth above, it shall be deemed to have fulfilled any and all obligations under this AGREEMENT and that PLAINTIFF shall not have any interest, right, or authority to seek enforcement under this AGREEMENT after such time.

## REPRESENTATIONS AND WARRANTIES:

In further consideration of the above-mentioned consideration, the PARTIES agree, represent, and warrant as follows:

1. PLAINTIFF understands that liability at issue in the LITIGATION is disputed by DEFENDANT and that this AGREEMENT constitutes the compromise of disputed claims and shall not be construed as an admission of liability on the part of any party referred to herein.

2. The PARTIES have not heretofore assigned, transferred, or granted, or purported to assign, transfer or grant, any of the claims, demands, or causes of action disposed of by this AGREEMENT.

3. PLAINTIFF expressly acknowledges that it is aware that it may hereafter discover claims or facts in addition to or different from those known or believed to be true with respect to any matter disposed of by this AGREEMENT. Nevertheless, it is the intention of the PARTIES to fully, finally, and forever settle and release all matters, and all claims relative hereto, known or unknown, but which have heretofore existed between them specifically related to the LITIGATION more fully described above. In furtherance of this express intention,

the releases given herein shall be and remain in effect as a full and complete mutual release of all matters notwithstanding the discovery or existence of any additional or different claims or facts relative hereto.

4. This AGREEMENT is a full and final release applied to all of PLAINTIFF'S known, unknown and unanticipated injuries, claims, costs or damages arising out of or in any way connected with or resulting from the LITIGATION more fully described above. PLAINTIFF, on behalf of itself, its executors, administrators, successors, attorneys, agents, and/or assigns, hereby settles with, releases, and forever discharges DEFENDANT along with its agents and all other officers, employees, elected officials, attorneys, insurers, heirs, descendants, and representatives of any of them from any, all, and every claim, action, or cause of action of whatever kind, including, but not limited to, any claims for injuries, loss of consortium, property damage, costs, expenses, attorney fees, and/or other damages, whether known or unknown, which PLAINTIFF now has or may have or later discover, arising form or in any way related to the facts and circumstances which gave rise to the LITIGATION. The PARTIES understand and agree that this AGREEMENT is intended to cover, and does cover, not only all known economic losses, non-economic losses, damages, and expenses incurred including attorney fees and court costs, but any future losses, damages, and expenses not known or anticipated, but which may later be discovered, including all the effects and consequences thereof. It is further expressly understood and agreed that this AGREEMENT is intended to cover and, and does cover, all claims

which have been set forth or which could have been set forth by the PLAINTIFF against the DEFENDANT in any way related to the LITIGATION. This release is intended to be as comprehensive as can be conceived and as the law will allow and includes but is not limited to claims based on state and federal law, the United States Constitution, the Ohio Constitution, and 42 U.S.C. § 1983.

5. PLAINTIFF specifically releases any claims or causes of action that it has, had, or may have into the future for any form of interest, be it in the form of interest from the date the claims were first submitted to DEFENDANT, interest into the future, interest from the verbal agreement to settle all the claims, until the time that this AGREEMENT is executed, and any statutory interest claims that may be available to the PLAINTIFF pursuant to the statutes of the State of Ohio or any other state and the statutes of the United States of America.

6. The PARTIES understand and agree that the consideration contained in the AGREEMENT is the sole consideration for entering into this AGREEMENT and that no other representations, promises, or inducements have been made other than as appear in this AGREEMENT.

7. PLAINTIFF acknowledges and declares that it has been represented by counsel in this matter, that it has read this AGREEMENT, that it fully understands its terms, and that it voluntarily accepts the consideration set forth herein for purposes of making a full and complete compromise, adjustment, and settlement of all claims and potential damages against DEFENDANT.

8. In consideration of the FEE SUM, PLAINTIFF warrants, covenants, and agrees to reimburse and /or pay any lien, rights of subrogation that have been have been made or are made by any attorneys, government entity or agency, recovery company, or any insurance company or other entity because of payment for their expenses or services related to the LITIGATION, and that any such lien(s) or claim(s) are PLAINTIFF'S sole responsibility. The PLAINTIFF will indemnify and hold harmless DEFENDANT from any liability, judgments, litigation expenses (including attorney fees and costs) incurred by the DEFENDANT in defending any claims by any attorney, governmental entity or agency, recovery company, insurance company or other entity asserting such liens and/or subrogated rights related to the FEE SUM.

9. This AGREEMENT is executed within the State of Ohio and the rights and obligations of the PARTIES shall be construed and enforced in accordance with, and governed by, the laws of the State of Ohio without regard to the choice of law rules.

10. In event of a dispute, the PARTIES will meet and confer in good faith to attempt to resolve any dispute. If the PARTIES are unable to resolve the dispute the PARTIES shall contact the Court to request a status conference to attempt to resolve the dispute prior to initiating litigation seeking to enforce this AGREEMENT. In the event of litigation relating to the enforceability of this AGREEMENT, the prevailing party or parties shall be entitled to recover its attorney's, expert's, and other related fees, costs, and expenses relating to such action.

11. In the event that any one provision of this AGREEMENT is later determined by the Court to be void or voidable, the PARTIES agree that any such language or provisions shall be severable, and that any such provisions so severed shall not affect the validity of the remainder of the AGREEMENT subsequent to such severance.

12. This AGREEMENT contains the entire agreement between the PARTIES.

13. The PARTIES agree that this AGREEMENT may be signed in separate counterparts.

14. The PARTIES agree that that they will move the Court to enter an order approving this AGREEMENT and maintaining jurisdiction over this matter in order to enforce this AGREEMENT.

15. The terms of this AGREEMENT are equally enforceable by either party. However, any future challenge to the application of the POLICY cannot be made via an action to enforce this AGREEMENT. The PARTIES intend that, should PLAINTIFF or any other entity or individual seek to challenge an application of the POLICY, as opposed to seeking to enforce the terms of the AGREEMENT, that person or entity would have to file a different action.

16. Nothing in this AGREEMENT prohibits, limits, or prevents the DEFENDANT from modifying, altering, or amending the POLICY after it has been implemented to comport with changes in the law, judicial jurisprudence, or accepted best practices. Likewise, nothing in this AGREEMENT prohibits, limits,

or prevents PLAINTIFF from filing a lawsuit to challenge the application of the POLICY here, or any future policy or policy change by the City of Akron.

For PLAINTIFF:

*Natalia Wyrd*

Name: Natalia Wyrd
Title: Organizer
THE AKRON BAIL FUND

Date: July 2nd, 2024

For DEFENDANT:

Name: Deborah S. Matz
Title: Law Director
CITY OF AKRON, OHIO

Date: July 23, 2024

Approved as to form and correctness:

DEBORAH S. MATZ
DIRECTOR OF LAW
CITY OF AKRON, OHIO